# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LINDA W. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. |
| | )        2:08-CV-01750 |
| COMFORT CARE HOSPICE, LLC, | ) |
| a/k/a RESTORE MANAGEMENT | ) |
| COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the court on "Defendant Comfort Care Hospice, LLC's Motion for Summary Judgment" (doc. 27); and "Plaintiff's Motion in Opposition to Defendant Comfort Care Hospice, LLC's Motion for Summary Judgment" (doc. 31), styled as a motion but in fact an opposition to Defendant's motion. Defendant filed a reply (doc. 33).

Plaintiff's Complaint originally asserted three counts. This court previously dismissed Counts I and II of the Complaint (doc. 12). The only remaining Count, Count III, asserts that Defendant discriminated against Plaintiff on the basis of her disability and/or perceived disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et. seq.* Defendant argues that it is entitled to summary judgment on each of Plaintiff's disability discrimination claims because Plaintiff was not "disabled" and, even if she were, no evidence exists that Defendant discriminated against her. The issue for this court to decide is whether the

1

Plaintiff was "disabled" within the meaning of the ADA. For the reasons stated in this opinion, the court finds that Plaintiff is not "disabled" within the meaning of that act, and thus, that Comfort Care's motion for summary judgment is due to be GRANTED.

## I. FACTS

From May 16, 2005 to February 19, 2007, the Plaintiff, Linda Smith, worked as a Licensed Practical Nurse for Defendant Comfort Care Hospice, a limited liability corporation located in Pelham, Alabama that provides in-home hospice care to dying patients. Smith visited five to six patients per day and her job duties included, among others: driving to patients' homes; assessing patients; taking vital signs; listening to patients' lungs and heart rates; ordering prescription refills; talking with patients' doctors; assisting patients with bathing; and cleaning and dressing a deceased patient's body.

Glenda Caffee, who was then the Branch Administrator at Comfort Care's Pelham Office, hired Smith and supervised her. After Caffee's promotion to Regional Administrator, Michelle Towns became Pelham Branch Manager and also supervised Smith. Heather Calhoun, the Patient Care Coordinator, assigned patients to Smith and also supervised her. During her employment with Comfort Care, Smith performed her job well, and Comfort Care did not receive complaints from patients or employees about Smith's work.

On the morning of February 1, 2007, Smith ran a red light and hit another car. Numerous disputes of fact exist surrounding Smith's activities on the date of the accident. For example, the parties disagree on whether Smith was scheduled to work that date, whether she was actually working, and whether she told Comfort Care personnel that she was working. In any event, at the direction of her supervisors after the wreck, Smith went by the Comfort Care Pelham office

that afternoon to meet with them, and she took a drug test. Following a positive drug test, Comfort Care suspended Smith and when an investigation ensued initially confirming the positive drug test, Comfort Care terminated Smith's employment.

Smith subsequently contacted the medical review officer who had confirmed the positive drug test, advised him that the drug she had taken on the day before the accident had been prescribed by a physician, and her positive drug test was changed to a negative one. Smith did not directly contact Comfort Care after receiving the negative test result, and thus, was not re-hired. She currently works full time as an LPN for a separate hospice service provider; as of the date of her deposition in April 2009, she was able to perform all of her job duties, including driving to patients' homes.

*Smith's Medical Conditions*

Comfort Care suspended Smith on February 1, 2007, approximately one month after she returned from a medical leave, and terminated her on February 19, 2007. Smith argues that the termination represented a discriminatory act falling under the American with Disabilities Act. In her Complaint, she claims that Comfort Care discriminated against her based on several medical conditions, presumably in combination, rather than one specific impairment. Her brief identifies only her vertigo and heart problems as disabling impairments, but also identifies her lung and foot problems as conditions that Comfort Care would have "regarded as" disabilities.

*Cardiac Problems*

In September of 2006, Smith visited the emergency room with chest pains and was diagnosed with heart problems. Soon thereafter, a cardiologist installed a stent that alleviated her

heart pains for a period of two years. Two days after her stent was installed, Smith was able to resume her normal activities and job duties.

After the stent installation and during her employment with Comfort Care, Smith states that she experienced a lack of energy and "being extremely tired," which she attributes to her heart function and but also to her sleep apnea. (Smith depo. 34). During the years she worked at Comfort Care, despite her fatigue, she was able to work and still performed her job duties at Comfort Care and her normal life activities such as dressing herself, taking care of herself, shopping for groceries. However, she would go home after work and go to bed. Her grandchildren would come over to her house with her daughter and they would read and watch cartoons together, but she would not take them on outings to Wal-Mart: picking up multiple small children, loading them in car seats, and taking them somewhere was too much of a struggle.

At some point, she saw her cardiologist for chest pains and had an arteriogram to check the stent placement, but she does not know the time frame for the arteriogram and does not state whether the arteriogram occurred while she was employed at Comfort Care or afterwards. (Smith depo. 33). On September 29 or 30, 2008, more than a year and a half after she was terminated from Comfort Care, Smith had a heart attack, and underwent surgery for blockage in the same area where the stent had been placed in 2006.

*Vertigo*

In early October of 2006, the month after her heart stent, Smith requested and received a leave of absence under the Family & Medical Leave Act to receive treatment from Dr. Randall Real for her benign positional vertigo. With her FMLA request, Smith submitted Dr. Real's note

4

excusing her from work from October 2, 2006 "until seen and released by a neurologist." (Smith depo. Ex. 5; D.'s Br. doc. 28, ¶ 9).   The Physician Certification for leave only listed "vertigo unable to drive" as "relevant medical facts regarding the Patient's condition." (Smith depo. Ex. 4).

On December 12, 2006, Charlene Dunlap, an HR person contracting with Comfort Care, notified Smith by letter that she had almost exhausted her FMLA leave and had to return to work by December 26, 2006 or be placed on inactive status.  Smith obtained a "return to work" form signed by Dr. Real excusing her from work from 10/2/06 until 12/25/06, and she also obtained a note from her cardiologist, Dr. Michael Wilensky, stating that she could return to work as of 12/21/06.  However, Smith did not return to work by that date because she was unable to obtain a neurologist's release in December; she could not get an appointment to see her neurologists until mid-January.  Because her treating physician had conditioned her return on a neurologist's release, Comfort Care initially wanted reassurance from a neurologist that she could return.  However, in light of Smith's difficulties in obtaining a timely appointment and to help Smith return to work as quickly as possible, Dunlap gave her the option of being evaluated by Dr. Moyo, Comfort Care's Medical Director, rather than waiting to see one of her neurologists.  In early January, Dr. Moyo evaluated Smith and cleared her to return to work, which she did on January 9, 2007.

Smith's neurologists never determined the cause of her vertigo; it was a temporary condition that resolved itself during her leave and has not recurred.  Smith resumed her normal LPN duties at Comfort Care without restrictions.  Except during her three-month leave of absence, Smith was physically and mentally able to perform her job duties throughout her

employment with Comfort Care. She never needed assistance or accommodation to perform her LPN job either with Comfort Care or with her current employer.

*Lung Problems*

Concerning her lung problems, Smith stated that she had "a little bit of emphysema" caused by her smoking. (Def.'s Undisputed Fact doc. 28 ¶ 62, Smith depo. 228). About the time of her heart problems in 2006, Smith experienced shortness of breath, which also improved with the placement of the stent, and her lung problems during the time she worked at Comfort Care were "okay," did not limit her activities, and required no special accommodation at Comfort Care. (Def.'s Undisputed Fact ¶ 63, Smith depo 228-29). Her oxygen level is fine.

*Foot Problems*

Concerning her foot problems during the years at Comfort Care, Smith had a growth on the bottom of her left foot that caused her some pain. While the growth impacted her ability to walk to some extent and she could not "run a race" or take long walks, it did not prevent her from performing work-related activities; she stated that she did not "work any jobs that requires that much walking." (Smith depo. 225). The growth did not prevent her from performing major life activities like working or caring for herself. Smith has had foot surgeries in the past, but none while she was employed at Comfort Care.

*Comfort Care's Knowledge of Smith's Health Problems*

When asked whether Caffee or Dunlap knew of her medical problems, Smith responded that Caffee would have known that Smith went to the emergency room with chest pains, presumably in 2006, because Smith called Caffee when she was going to the ER. Comfort Care would have obviously known of her vertigo, because she received medical leave for that

6

condition; Dunlap was obviously aware of this condition and sent her a letter about it and worked with her about getting medically released to return to work. Dunlap testified, however, that she was unaware of any health problems that Smith experienced other than her vertigo. Dunlap further stated that Smith's alleged health conditions played no role in Comfort Care's employment decision to suspend and terminate her.

Caffee acknowledges knowing that Smith had experienced a foot problem, because when Caffee was Pelham branch manager, Smith told her that she had undergone foot surgery. However, that surgery did not occur during her employment with Comfort Care. Caffee testified that she did not know of any health problem that Ms. Smith experienced after Caffee became Regional Administrator and did not know of any reason any other employee might perceive that Smith had a medical condition affecting her ability to work

Smith testified that she had no reason to think that any of her supervisors at Comfort Care thought she could not perform her job as an LPN.

## II.  STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."). The moving party need not present evidence in a form admissible at

trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324. If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

### III. DISCUSSION

Smith's sole claim is that Comfort Care discharged her in violation of the Americans with Disabilities Act (the "ADA")[1], 42 U.S.C. §§ 12101 *et seq.* Smith's ADA claim is subject to the *McDonnell-Douglas* burden-shifting analysis. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). Under that analysis, Smith first must prove a *prima facie* case of discrimination. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). To prove a *prima facie* case of discrimination under the ADA, Smith must establish that she "(1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001), *cert. denied,* 535 U.S. 1096 (2002) (quoting *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)).

Comfort Care argues that Smith cannot meet her *prima facie* case because she is not disabled within the meaning of the ADA. The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The court must determine whether Smith has established that she falls under any of these three categories of disability.

---

[1] Congress recently enacted major changes to the ADA, the ADA Amendments Act of 2008 (the "ADAAA") Pub. L No. 110-325, 122 Stat. 3553 (2008) which became effective January 1, 2009. The parties make no argument that the amendments should apply retroactively, and indeed, Defendant argues that it does not. *See* Def.'s Br. doc. 28 n. 7. Noting the absence of Congressional expressed intent for the amendments to be applied retroactively and further noting the absence of any controlling authority from the Supreme Court or the Eleventh Circuit to that effect, this court will analyze Smith's alleged disability under the ADA as in effect at the time of the actions made the basis of this suit. *See Fikes v. Wal-Mart, Inc.*, 32 Fed. Appx 882, 883 n. 1 (11th Cir. 2009*)* (an unpublished opinion that did not apply the amendments retroactively).

*A. Impairment that Substantially Limits a Major Life Activity*

The record reflects that Smith is currently working full time in the same type of job that she performed for Comfort Care; she is an LPN for a hospice service provider. In her responsive brief, Smith acknowledges "Comfort Care may be correct in that Linda Smith may not currently be disabled," but insists that she did have qualifying physical impairment during the time period that she worked for Comfort Care. (Pl.'s Br. doc. 32, at 14). Smith identifies her heart condition and benign positional vertigo as qualifying impairments under the first two categories of disability defined in § 12102(2)(A) or (B). Smith's brief does not identify as disabling impairments under categories A or B the following impairments listed in her Complaint: her foot problems, lung problems, sleep apnea, or headaches. Therefore, the court will DEEM any claim for disability based on those individual ailments to be abandoned with respect to the first two categories. However, because Smith identified her foot and lung problems as impairments that Comfort Care "regarded as" disabilities under § 12102(2)(C), the court will address those physical impairments later in this opinion.

A physical impairment is not necessarily a qualifying impairment under the ADA. *See Hillburn v. Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999). To qualify as an ADA impairment, the impairment must substantially limit one or more of plaintiff's major life activities. 42 U.S.C. § 12102(2)(A). As defined by HEW Rehabilitation Act regulations, major life activities "means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 42 C.F.R. § 84.3(ii). In addressing the term "substantially limits," the Supreme Court has explained that "'substantial' thus clearly precludes impairments that interfere in only a minor way" with major life activities. *Toyota*

*Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198 (2002), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3353 (2008). The Supreme Court concluded that a qualifying impairment must "prevent[ ] or severely restrict[ ] the individual from doing activities that are of central importance to most people's daily lives" and that its "impact must also be permanent or long term." *Id.* at 198.

In the instant case, the court finds that Smith's benign positional vertigo does not qualify because it was a temporary impairment, resolving itself within her FMLA leave time from October 2, 2006 through January 8, 2007. *See Toyota,* 534 U.S. at 198; *see also* 29 C.F.R. § 1630.2(j)(2) (instructing the courts to consider "the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.").

Concerning her heart problems, Smith argues that her heart condition qualifies as a disability because it was permanent or long-term, first manifesting itself in September 2006 and continuing over two years through her heart attack in September 2008 and surgery in October 2008. She produces the following evidence: that she went to the emergency room in September 2006 with chest pains and had a stent installed at that time; that the stent alleviated her chest pains for two years; that two days after the stent was installed, she resumed her normal activities; that she returned to the cardiologist with chest pains and had another arteriogram to check stent placement, but she does not establish that this arteriogram occurred during her employment with Comfort Care; that on September 29 or 30, 2008, more than a year and a half after she was terminated from Comfort Care, Smith had a heart attack and heart surgery to fix a blockage in the stent area; that as of April 2009, Smith had returned to work full time. In her deposition, Smith testified that after the stent was installed, she had a lack of energy that she attributed in part to

heart problems, and she would often "go home [after work] and basically just go to bed." (Smith depo. 33). In her responsive brief, Smith argues that she took medical leave beginning in October of 2006 in part because of heart problems; however, the evidence of record does not support that argument and reflects instead that the leave was because of her vertigo and related inability to drive.

Heart disease does constitute a physical impairment under the ADA. *Hillburn*, 181 F.3d at 1227. However, the court finds that Smith has not met her burden of proving that, at the time of her employment with Comfort Care, her heart problems substantially limited a major life activity. Rather, the evidence reflects that in September of 2006, Smith experienced heart pains and that the installation of a stent in September of 2006 resolved them for the duration of her employment with Comfort Care. The record also reflects that, during her employment with Comfort Care, she experienced fatigue that may have been related to her heart condition. However, her fatigue did not prevent her from performing her job, dressing and taking care of herself, feeding herself, and shopping for groceries.

The only life activity that Smith specifically states that she was unable to do when she was working for Comfort Care was to pick up and install multiple car seats to take multiple grandchildren to Wal-mart; she indicated that this activity was "too much of a struggle" for her. Although taking her grandchildren to Wal-mart may be a desirable activity from Smith's point of view, it is not a major life activity similar to the others listed in this CFR listing: performing "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *See* 42 C.F.R. § 84.3(ii). And, the court notes that even the healthiest of grandmothers with no pending claims of disability might well characterize

the process of taking multiple young grandchildren shopping as a struggle. Further, if wanting to go straight to bed after a day's work signified eligibility for disability under the ADA, many in the work force would qualify.

In any event, the court concludes that Smith has not created a genuine issue of material fact concerning whether her coronary heart disease and/or vertigo substantially limited any major life activity during her employment with Comfort Care. Further, the court finds that Smith has not created a genuine issue of material fact concerning whether her physical problems, taken in combination, substantially limited any major life activity during her employment with Comfort Care. Therefore, she failed to establish that any impairment rendered her "disabled" within category A of § 12102(2).

### B. Record of Disabling Impairment

Smith also submits that she is disabled under the ADA because Comfort Care had a documented record of her impairment as a result of her medical leave of absence for her vertigo condition. The relevant regulation defines "record of such impairment" as meaning that a person "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). Smith provides no evidence of misclassification. Although the record may reflect that Smith's vertigo problems temporarily limited a major life activity, the record also reflects that those problems were resolved within her three-month leave time. No evidence reflects that Comfort Care had a record of an impairment of a long term or permanent nature that would substantially limit one or more of Smith's major life activities. Further, no evidence reflects that Comfort Care had a record of Smith's combination of such impairments that, taken together, would substantially limit one of

more of her major life activities. Accordingly, the court finds that Smith has not created a genuine issue of material fact that Comfort Care had a record of an impairment that would meet the definition of a disability under the ADA.

   C. "Regarded As" Disabled

Smith also argues that Comfort Care regarded her as being disabled under 42 U.S.C. § 12102(2)(C). In support of her argument, Smith points to evidence that Comfort Care administrators knew of her benign positional vertigo (her medical leave from 10/2/06- 1/09/07 and accompanying documents); her heart problems (Smith's call to Caffee when Smith went to the ER with heart pains; Dr. Wilensky's return-to-work form clearly identifying him as a cardiologist); and her foot problems (Caffee testified that Smith had advised her that Smith had undergone foot surgery prior to her employment with Comfort Care). Although Smith also argues in her brief that Caffee knew of her lung problems, the evidence does not support Caffee's knowledge of that impairment[2].

The relevant statute defines a person disabled under this provision as one who "(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by [an employer] as constituting such limitation; (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) Has none of the impairments [defined as disabling] but is treated by [an employer] as having a substantially limiting impairment." 29 C.F.R. § 1630.2. "As with actual

---

[2] Smith cites page 232 of her deposition as supporting Caffee's knowledge about Smith's heart *and lung* problems. Although Smith's testimony supports a positive response regarding Caffee's knowledge that Smith had experienced *heart pain*, it did not support Caffee's knowledge that Smith experienced *lung problems*.

disabilities, a perceived impairment must be believed to substantially limit a major life activity." *Hillburn*, 181 F.3d at 1230.

In the instant case, Smith has offered evidence that Comfort Care administrators knew that she had certain physical problems. However, as noted previously, a physical impairment is not necessarily a qualifying impairment under the ADA. *See Hillburn*, 181 F.3d at 1226. Smith has offered no evidence that Comfort Care regarded those known physical problems as substantially limiting a major life activity or that Comfort Care otherwise treated Smith as if she suffered from a substantially limiting impairment. To the contrary, Smith has acknowledged in deposition testimony that she had no reason to think that any of her supervisors at Comfort Care thought she could not do her job as an LPN. Further, Comfort Care has offered uncontroverted evidence that while Comfort Care administrators were aware that Smith had seen a cardiologist and suffered from temporary vertigo, temporary heart pain, and previous foot problems, they were unaware that Smith had any *permanent or long term disability*. *See Toyota,* 534 U.S. at 198 (the impairment's "impact must also be permanent or long term"). Because the evidence reflects that Comfort Care administrators were unaware that Smith had any permanent or long term disability, did not exhibit an attitude that her impairments substantially limited a major life activity, and did not otherwise treat her as having a substantially limiting impairment, the evidence does not establish that Comfort Care regarded Smith as disabled. Accordingly, the court finds that Smith has not created a genuine issue of material fact that Comfort Care regarded her as being disabled.

## IV.  CONCLUSION

Having failed to create a genuine issue of material fact that she falls under any of the three categories of disability, the court finds that Smith has failed to establish the first element of her *prima facie* case under the ADA.  Thus, Comfort Care is entitled to summary judgment as a matter of law.  The court finds that Comfort Care's motion for summary judgment, which addresses Count III, is due to be GRANTED.  Because Count III is the only remaining count, Counts I and II having been dismissed previously, the court finds that this case is due to be DISMISSED WITH PREJUDICE.

Dated this 20th day of November, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE